UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STEVEN DUANE DENT,

            Petitioner,            Case No. 1:18-cv-884

v.                                      Honorable Paul L. Maloney

STATE OF MICHIGAN,

            Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a federal prisoner challenging a state judgment of conviction under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. <u>Factual Allegations</u>

In *United States v. Dent*, 599 F. App'x 584 (6th Cir. 2015) the Sixth Circuit Court of Appeals described the facts underlying Petitioner Steven Duane Dent's criminal convictions as follows:

> On March 15, 2007, Michigan State Trooper Matthew Unterbrink stopped Dent on Interstate 69 for what he believed to be a defective headlight on Dent's GMC Yukon. Although the sun had risen almost ninety minutes before the stop, many vehicles on the road had their headlights on due to what Unterbrink described as "gloomy" weather. Unterbrink saw through his side-view mirror that a passenger-side light on Dent's truck was not functioning. During the stop, Dent handed Unterbrink a Michigan driver's license bearing the name "James Walker" and vehicle registration in the name of "Steven Duane Dent." Another trooper, Ben Bordner, arrived and radioed for a background check of both names. Unterbrink asked Dent to step out of the truck while waiting for the background check. Dent consented to a pat-down search but refused to let the officers search his vehicle.
>
> When the background check suggested that "James Walker" was an alias for "Steven Duane Dent," Unterbrink and Bordner had a third trooper review the driver's license images of Walker and Dent. After the third trooper confirmed the images were of the same man, Unterbrink and Bordner arrested Dent for providing false information regarding his identity. Approximately thirty minutes passed between the initial stop and Dent's arrest. The officers searched Dent's truck after taking him into custody and found a duffle bag containing thirteen kilograms of cocaine.
>
> Upon closer inspection, Unterbrink learned that the defective light was a daytime running light located directly below the Yukon's main headlights. Michigan law does not prohibit operating a vehicle with a defective daytime running light.

*Dent*, 599 F. App'x 584-85. The facts underlying Petitioner's convictions may be straightforward, but the criminal proceedings were complex.

### A. Petitioner's Federal Conviction

Petitioner is incarcerated at the Elkton Federal Correctional Institution in Lisbon, Ohio. On August 12, 2013, Petitioner entered a plea of guilty to one count of conspiracy to

2

distribute 5 kilograms or more of cocaine, 21 U.S.C. § 846, in the United States District Court for the Eastern District of Michigan. Other charges were dismissed.

Petitioner entered his plea only after the district court had denied his motion to suppress the cocaine evidence that had been seized in connection with the traffic stop described above. *See* Memorandum and Order, *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. Aug. 2, 2013). Petitioner's plea was conditioned on the preservation of his right to appeal that denial. *See* Rule 11 Plea Agreement, *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. Aug. 12, 2013). On April 15, 2014, the district court sentenced Petitioner to twenty years' imprisonment. *See* Judgment, *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. April 15, 2014).

Petitioner appealed the denial of his motion to suppress. He lost. *United States v. Dent*, 599 F. App'x 584 (6th Cir. 2015). Although Petitioner raised several concerns about the stop and the resulting search and seizure, the court concluded that Petitioner's rights had not been violated. *Id.* at 585-86. Petitioner filed a petition for writ of certiorari in the United States Supreme Court. The Supreme Court denied the petition on October 7, 2015.

Undeterred by his lack of success in challenging the validity of the search, Petitioner filed a motion to vacate sentence under 28 U.S.C. § 2255. *See* Pet'r's Mot., *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. Oct. 12, 2016). Two of the nine issues he raised in the motion to vacate were premised on the invalidity of the search. By memorandum and order entered August 16, 2017, the district court denied relief. *See* Memorandum and Order, *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. Aug. 16, 2017). By order entered May 31, 2018, the Sixth Circuit denied Petitioner's motion for a certificate of appealability.

### B. Petitioner's State Conviction

Petitioner was equally persistent in challenging the search and seizure in the state courts. Petitioner was charged in state court with possession of 1,000 or more grams of cocaine with intent to deliver, Mich. Comp. Laws § 333.7401(2)(a)(*i*), resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d(1), and providing false identification, Mich. Comp. Laws § 257.324(1)(a). Petitioner moved to suppress the cocaine that was seized in connection with the March 2007 traffic stop. The trial court denied the motion.

On November 21, 2008, following a bench trial in the Branch County Circuit Court, Petitioner was found guilty of each charge. Petitioner failed to appear. He remained at large until 2012. On April 24, 2012, Petitioner was arrested in Arizona on a warrant issued in connection with the federal prosecution. Upon completion of the federal district court proceedings, the Branch County Circuit Court sentenced Petitioner for the state offenses. The court imposed sentences of 22 years, 6 months to 40 years for possession with intent to deliver, 1 year, 4 months to 2 years for resisting and obstructing, and 90 days for providing false identification.

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences. Petitioner challenged, among other things, the validity of the search.[1] In a per curiam opinion issued January 19, 2016, the Michigan Court of Appeals affirmed the trial court's denial of Petitioner's motion to suppress the evidence. *People v. Dent*, No. 323727, 2016 WL 232410 (Mich. Ct. App. Jan. 19, 2016). The Michigan Supreme Court denied Petitioner's application for leave to appeal on September 27, 2016. *People v. Dent*, 885 N.W.2d 268 (Mich. 2016).

---

[1] Petitioner had filed an interlocutory application for leave to appeal the trial court's denial of his motion to suppress the evidence. The Michigan Court of Appeals denied leave by order entered January 4, 2008. The Michigan Supreme Court denied leave by order entered April 28, 2008. The Michigan appellate courts did not address the substance of Petitioner's challenges until his direct appeal as of right.

4

Petitioner then returned to the trial court. He filed a motion for relief from judgment that, using slightly modified wording, once again challenged the validity of the search. He also argued that his appellate counsel had rendered ineffective assistance because counsel had not raised the challenges as worded by Petitioner. By order entered May 19, 2017, the trial court denied Petitioner's motion because the motion raised the same issues that had already been decided against Petitioner on his direct appeal. (Branch Cty. Cir. Ct. Order, ECF No. 1-1, PageID.18.) Petitioner sought leave to appeal that denial in the Michigan appellate courts. The court of appeals denied leave by order entered October 27, 2017, (Mich. Ct. App. Order, ECF No. 1-1, PageID.19), the supreme court denied leave by order entered July 27, 2018 (Mich. Order, ECF No. 1-1, PageID.20).

Petitioner raises four issues in his petition:

I. Petitioner['s] rights protected by the 4th and 14th Amendments and due process were violated when the law enforcement office deprived Petitioner equal protection of law and lacked probable cause for the traffic stop and the traffic stop was unlawfully prolonged because the officer lacked reasonable suspicion, the traffic stop from the beginning to end was fraught with errors and falsehood, in short the stop was bad.

II. The state violated Petitioner['s] rights protected by the 4th, 5th and 14th Amendment[s] by den[y]ing the Petitioner equal protection of the law and due process of law, where the state court did not follow the United States Supreme Court preceden[ts], when if clearly ignored the fact that the officer stated that he stopped the Petitioner for a headlight that was not working, but didn't verify that the headlight [was] working until after the vehicle was at the police station, rendering the judgment issued by the state court void.

III. Petitioner's rights that [are] protected by the 4th and 14th Amendment[s] were violated when the arresting officer, presumed to know the law, knew the Petitioner had committed no civil infraction.

IV. Appellate counsel provided ineffective assistance of counsel.

(Pet., ECF No. 1, PageID.6-11; ECF No. 1-1, PageID.21, 29, 38.)

## II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III. *Stone v. Powell* (Habeas Issues I, II, and III)

Petitioner's claims challenging the state court's denial of his motion to suppress are barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not

available to a prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

8

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Here, the question of the legality of the search was raised on interlocutory appeal and then on direct appeal. The Michigan Court of Appeals reviewed and upheld the validity of the search and seizure against all of the arguments Petitioner now raises. The state corrective mechanism was available and utilized. Petitioner has not shown that the state corrective mechanism had broken down. Accordingly, the doctrine of *Stone v. Powell* precludes habeas relief on Petitioner's Fourth Amendment claims.

IV. <u>Ineffective Assistance of Appellate Counsel (Habeas Issue IV)</u>

Petitioner next contends that his appellate counsel was ineffective for failing to challenge the trial court's denial of Petitioner's motion to suppress the evidence.[2] In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim

---

[2] Even though the doctrine of *Stone v. Powell* precludes this Court's habeas review of Petitioner's Fourth Amendment claims, it does not bar Petitioner's ineffective assistance claim, even if that claim is premised on counsel's failure to properly raise Petitioner's Fourth Amendment claim. *See Kimmelman v. Morrison*, 477 U.S. 365 (1986).

9

of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The effectiveness of appellate counsel's assistance is also judged by the *Strickland* standard. On appeal, however, an appellant has no constitutional right to have every non-frivolous issue raised. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* Counsel's

failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).

Here, no matter how many ways Petitioner attempts to restate his challenge to the trial court's denial of his motion to suppress, his challenges have no merit. First, as a matter of indisputable fact, appellate counsel challenged the trial court's denial of Petitioner's suppression motion. The Branch County Circuit Court and the United States District Court for the Eastern District of Michigan have recognized that Petitioner's minor rewording of the challenges has not created any substantive difference from the challenge as initially raised by appellate counsel. *See* (Branch Cty. Cir. Ct. Order, ECF No. 1-1, PageID.18) ("The defendant raised the same issues in like and different terms that were previously addressed in his appeal . . . ."); Memorandum and Order, *United States v. Dent*, No. 1:10-cr-20112 (E.D. Mich. August 16, 2017) ("Petitioner's trial and appellate counsel challenged the legality of the stop on **slightly different** grounds. . . . Petitioner['s] . . . challenge . . . fails in light of the Court's finding, affirmed by the Sixth Circuit, that the stop was reasonable and supported by probable cause . . . . Petitioner cannot relitigate the legality of the stop in these proceedings.") (emphasis added). Accordingly, Petitioner has failed to demonstrate that his appellate counsel's conduct was professionally unreasonable.

Moreover, Petitioner has failed to show any prejudice resulting from appellate counsel's failure to raise the search challenge in some new and different way. The Branch County Circuit Court, the Michigan Court of Appeals, the United States District Court for the Eastern District of Michigan, and the Sixth Circuit Court of Appeals have all examined the search and Petitioner's various claims that the search was invalid. Each court has concluded that the search is valid and that Petitioner's claims have no merit. Even if those findings are not binding and even if they do not estop Petitioner from continuing to raise the same challenges, they are persuasive.

For the reasons already identified by the other courts, this Court likewise concludes that Petitioner's proposed challenges to the legality of the search are without merit. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on his claim that his appellate counsel rendered ineffective assistance.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated:   October 31, 2018                         /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  United States District Judge